# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ERNEST WILLIAMS,**

          **Plaintiff,**

**-vs-**                                 **Case No.  6:09-cv-1129-Orl-28GJK**

**COMMISSIONER OF SOCIAL
SECURITY,**

          **Defendant.**

_____

# REPORT AND RECOMMENDATION

## TO THE UNITED STATES DISTRICT COURT

Plaintiff Ernest Williams (the "Claimant") appeals to the district court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for benefits. *See* Doc. No. 1.  The Claimant maintains he became disabled on January 26, 2007, due to his human immunodeficiency virus (HIV) and back and knee problems. R. 125, 130, 172. At the administrative level, the Commissioner denied the Claimant's applications, finding that he is not disabled. R. 4-19.   For the reasons set forth below, it is recommended that the Commissioner's decision be **AFFIRMED**.

## I.      MEDICAL HISTORY

On January 3, 2005, the Claimant presented to Quick Care Medical Treatment Centers complaining of a rash all over his body. R. 211.  Claimant was diagnosed with HIV. *Id.*  On August 6, 2005, the Claimant presented to the Halifax Medical Center ("Halifax") emergency department complaining of back pain. R. 263.  On August 25, 2005, the Claimant returned to the

Halifax emergency department complaining of back pain and he indicated that Darvocet was not working. R. 266. He was prescribed Ultracet and Flexeril. *Id.*

On October 3, 2005, Daniel Warner, M.D., began treating the Claimant. R. 229. Dr. Warner diagnosed the Claimant with HIV, lipoatrophy, renal insufficiency and cataracts/glaucoma. *Id.* Dr. Warner noted that the Claimant continued to be compliant with his antiretroviral therapy and he complained of lower back and left knee pain. *Id.* Dr. Warner indicated that the Claimant's HIV was currently stable on his therapy. *Id.*

On October 11, 2005, a magnetic resonance imaging (MRI) revealed degenerative disc disease at L4-L5 and L5-S1. R. 224.

On March 14, July 12 and November 2, 2006, Dr. Warner indicated that the Claimant continued to be compliant with treatment and was responding well. R. 235, 242, 245. He noted on July 12, 2006, that the Claimant complained of a rash on his face but was otherwise clinically asymptomatic. R. 242.

On February 21, 2007, the Claimant presented to Halifax emergency department complaining of back pain. R. 276. The Claimant stated that he used Lortab in the past which gave him relief. *Id.* He indicated that he was allergic to Tylenol with codeine, Darvocet and Penicillin. *Id.* He was given a prescription of Dolobid. *Id.* On March 13, 2007, the Claimant returned to Halifax stating that the Dolobid did not help. R. 289. John Penington, M.D., prescribed the Claimant Parafon Forte. R. 280. He noted that the Claimant was tender over his lower back but he seemed "to move about without evidence of limitations or any significant discomfort." R. 279.

In April of 2007, the Claimant was incarcerated for domestic violence. R. 303-10. An MRI obtained on July 26, 2007, revealed disc desiccation at L4-L5 and L5-S1. R. 350. At L5-S1, there was disc bulging with superimposed left lateral disc protrusion causing moderate left neural foraminal narrowing and abutment of the exiting left L2 nerve root. *Id.* At L4-L5, there was diffuse disc bulging and facet ligamentous hypertrophy with mild bilateral neural foraminal narrowing. *Id.*

On August 1, 2007, the Claimant returned to Dr. Warner following his incarceration. R. 344. The Claimant reported a recurrence of his chronic skin ulcerations after being off his antiretroviral therapy. *Id.* Aside from the rash, he denied any new symptoms. *Id.*

On August 13, 2007, the Claimant returned to Halifax complaining of chronic lower back pain and seeking a prescription medication refill. R. 370. The examining doctor noted that a review of the medical records revealed that the Claimant had developed a new drug allergy to the medications he was given on prior visits. *Id.* Claimant reported being allergic to Tramadol. *Id.* The doctor indicated that the Claimant moved his legs normally and he moved from sitting to standing without difficulty. R. 371. His paraspinal mild spasm was minimal with no pain with palpation of the lumbar sacral spine and he had no focal neuro or motor deficits. *Id.* The Claimant was prescribed Parafon Forte and Robaxin. *Id.* There are no further medical records from Halifax following this visit.

On September 12, 2007, Dr. Warner noted that the Claimant was compliant with therapy, his skin rash had resolved and he complained of back pain. R. 334. Dr. Warner prescribed Motrin for the back pain. *Id.*

On October 29, 2007, the Claimant presented to Kemshol Medical Center ("Kemshol"). R. 355. He complained of lower back pain and indicated that Lortab gave him relief. *Id.* The Claimant stated that his Lortab had been stolen, but he did not have the money to obtain a police report. *Id.* Olubukunola Thomas, M.D., prescribed the Claimant Lortab, but he indicated that his supply had to be reduced because there was no police report. *Id.* The Claimant denied any side effects from medication and stated that he sleeps well. *Id.*

On November 26, 2007, the Claimant returned to Kemshol. R. 353. He indicated that he experienced good relief with Lortab and was able to perform his activities of daily living. *Id.* He denied any side effects from his medications and indicated he sleeps well. *Id.* A drug screen from Kemshol indicated that the Claimant tested positive for marijuana (Tetrahydrocannabinol--THC). R. 354. The Claimant stated that he did not smoke and he passively inhaled marijuana because people smoked around him. *Id.* Dr. Thomas informed him that such passive inhalation should not result in a positive test for marijuana. *Id.* He strongly advised the Claimant to stop smoking marijuana. R. 353.

On January 7, 2008, the Claimant returned to Kemshol. R. 352. He indicated his low back pain was severe but he got good relief from Lortab. *Id.* He denied any side effects from his medications. *Id.* He indicated that he is able to perform his activities of daily living. *Id.*

## II.  ADMINISTRATIVE PROCEEDINGS

On February 6, 2007, the Claimant filed an application for a period of disability, disability insurance benefits and supplemental security income, alleging disability as of January 26, 2007. R. 114-35. On March 5, 2007, the Claimant completed a disability report for the Social Security Administration ("SSA"). R. 167-86. The Claimant indicated that his HIV and

back and knee problems limit his ability to work. R. 171. The Claimant was terminated from his previous employment on January 26, 2007. R. 172. The Claimant indicated that his medications cause the following side effects: appetite loss, nervousness, dizziness and upset stomach. R. 180.

On February 4, 2008, Administrative Law Judge JoAnn L. Anderson (the "ALJ") held an administrative hearing on the Claimant's claim for disability. R. 18-56. The Claimant and vocational expert ("VE") Robert Bradley testified at the hearing. *Id.* The Claimant testified that he is homeless and he gets food stamps. R. 24-25. When asked what the primary reason is that he cannot work, the Claimant's stated that his back and knees bother him, he gets sick during the day and he gets tired and has to rest. R. 29. When his attorney asked what problems are caused by HIV, the Claimant stated:

> Well, the problem is I can't, I don't feel like I, I mean I can't sit as long as I used to. Like I said it's causing nauseation [sic] in the morning, sometimes I vomit and in the afternoon I [am] just real tired.

R. 32. He testified that because he does not have a car, he walks wherever he needs to go during the day. R. 35-37. When asked by his attorney if his medications improve his condition, the Claimant testified that he has less nausea but he is still lazy and his lower back and knees bother him. R. 37. Claimant's attorney asked whether he suffered any side effects from his HIV medications and the Claimant stated:

> No more than like I said, sickness type. Until I, once I eat something then it'll pass over. But, I only take it like, I take it at 12:00 the morning, and I have a real hard time of it, I mean that's when I feel it.

R. 38.

On April 18, 2008, the ALJ issued a decision finding that Claimant is not disabled. R. 10-17. The ALJ made the following significant findings:

1. The Claimant has the following severe impairments: HIV, degenerative disc disease of the lumbar spine, disc bulging at L4-5 and L5-S1, and ventral hernia. R. 12.

2. The Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. R. 12.

3. The Claimant has the RFC to perform the full range of light work. R. 14.

4. The Claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but Claimant's statements concerning the extent of his symptoms are not credible to the extent they are inconsistent with the RFC assessment. R. 15.

In support of her credibility determination, the ALJ stated the following with respect to the Claimant's complaints of pain and side effects to his medications:

> The medical evidence confirms that the [C]laimant has been diagnosed as HIV+. However, the medical evidence shows that he has had no significant problems as a result of his HIV other than some occasional rashes. In February 2006, the [C]laimant denied having any shortness of breath or fatigue. In March 2006, Dr. Daniel Warner, the [C]laimant's HIV doctor, noted that the [C]laimant was stable on his medications. In July 2006[,] the [C]laimant had a rash on his face but he was "otherwise clinically asymptomatic". By November 2006, the [C]laimant's facial rash had resolved and he denied having any new constitutional symptoms. In March 2007, the [C]laimant had a recurrence of his rash and Dr. Warner encouraged him to be compliant with his HIV medications. In August 2007, the [C]laimant reported that he had been off his medications while in jail and he had developed some skin ulcerations. Dr. Warner restarted the [C]laimant on his medications and by September 2007, the [C]laimant's rash had resolved.
>
> . . .
>
> In terms of the [C]laimant's alleged back pain, the evidence shows that [he] does, in fact, have some disc bulges at the L4-5 and L5-S1 levels with evidence of degenerative disc disease, all of which is confirmed by MRI testing performed in July 2007. The undersigned notes, however,

that the [C]laimant has no significant neurological deficits, and he has also had a positive response to treatment and medications. Specifically, the evidence shows that the [C]laimant was treated at the emergency room at Halifax Medical Center in March 2007 for complaints of chronic back pain, but on examination he was able to move about without any evidence of limitation or any significant signs of discomfort . . . In August 2007, the [C]laimant sought emergency room treatment again for his back pain. Interestingly, the examining doctor noted that every time the [C]laimant came in for treatment of his back pain, he reported being allergic to each medication that he had been given at each previous visit. On examination, the doctor noted that the [C]laimant was able to move his legs well. He moved from sitting to standing without difficulty. He did have some spasms, but it was only "mild" and "minimal" and there was no pain to palpation of the lumbar spine . . . Two months later, on October 4, 2007, Dr. Olubukunola Thomas started the [C]laimant on Lortab for treatment of back and knee pain. At his next visit on October 29, 2007, the [C]laimant reported that he was getting good relief with the Lortab. He even stated that he was able to do his activities of daily living. He denied any side effects from the medications, and he stated that he was sleeping well. In November 2007 and January 2008, the [C]laimant again reported that he was getting good relief from his Lortab. The undersigned also notes that despite the [C]laimant's alleged back and knee pain, he is able to do a wide range of activities. He spends quite a bit of his day walking around town. In addition, he admitted to Dr. Thomas on several occasions that his pain was controlled with medications and he was even able to perform his activities of daily living.

R. 15-16 (internal citations omitted).

The Claimant requested review by the Appeals Council. R. 1-5. The Appeals Council noted that it received additional evidence, Pharmacy Information Sheets with reference pages from the Physician's Desk Reference, which it made part of the record. R. 4. Nonetheless, the Appeals Council denied review. R. 1-4. On June 30, 2009, Claimant filed an appeal before this Court. Doc. No. 1.

III.    **THE PARTIES' POSITIONS**

The Claimant assigns two errors to the Commissioner: 1) the ALJ did not apply the correct legal standards to Claimant's medication side effects and the Appeals Council failed to consider "new and material" evidence with respect thereto; and 2) the ALJ did not apply the correct legal standards as to Claimant's pain testimony. Doc. No. 14 at 2. Thus, the Claimant argues that the Commissioner's decision should be reversed and remanded for further proceedings. *Id.*

The Commissioner argues that substantial evidence supports his decision that the Claimant is not disabled. Doc. No. 15. The Commissioner maintains that the ALJ: 1) properly considered and evaluated the Claimant's alleged side effects from medication; and 2) properly determined the Claimant's credibility with respect to his alleged pain. *Id.* Furthermore, the Commissioner argues that the Appeals Council did not err in failing to consider the "new and material" evidence. *Id.* at 12-16. Thus, the Commissioner maintains that the decision should be affirmed. *Id.*

IV.    **LEGAL STANDARDS**

A.    **THE ALJ'S FIVE-STEP DISABILITY ANALYSIS**

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 CFR §§ 404.1520(a), 416.920(a). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 CFR §§ 404.1520(b), 416.920(b).  Substantial gainful activity ("SGA") is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves performing significant physical or mental activities.  20 CFR §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually performed for pay or profit, whether or not a profit is realized. 20 CFR §§ 404.1572(b), 416.972(b).  Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA. 20 CFR §§ 404.1574, 404.1575, 416.974, 416.975.  If an individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities.  20 CFR § 404.1521.  An impairment or combination of impairments is "not severe" when medical or other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 CFR §§ 404.1521, 416.921.

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process.  42 U.S.C. § 423(d)(2)(B).  The ALJ must evaluate a disability claimant

as a whole person, and not in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Accordingly, the ALJ must make it clear to the reviewing court that the ALJ has considered all alleged impairments, both individually and in combination, and must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *See Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987); *Davis*, 985 F.2d at 534. A mere diagnosis is insufficient to establish that an impairment is severe. *See Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1211 (M.D. Ala. 2002) (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)). A claimant has the burden of proof to provide substantial evidence establishing that a physical or mental impairment has more than a minimal effect on a claimant's ability to perform basic work activities. *See Bridges v. Bowen*, 815 F.2d 622, 625-26 (11th Cir. 1987). However, a remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly. *Vega v. Comm'r*, 265 F.3d 1214, 1219 (11th Cir. 2001). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, it must be determined whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listing(s)"). 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the claimant's impairment or combination of impairments meets or medically equals the criteria of a Listing and meets the duration requirement (20 CFR

§§ 404.1509, 416.909), the claimant is disabled.  If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the ALJ must first determine the claimant's RFC. 20 CFR §§ 404.1520(e), 416.920(e).  An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations secondary to his established impairments.  In making this finding, the ALJ must consider all of the claimant's impairments, including those that may not be severe. 20 CFR §§ 404.1520(e), 404.1545, 416.920(e), 416.945.

Next, the ALJ must determine at step four, whether the claimant has the RFC to perform the requirements of his past relevant work. 20 CFR §§ 404.1520(f), 416.920(f); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  The ALJ makes this determination by considering the claimant's ability to lift weight, sit, stand, push, and pull.  *See* 20 C.F.R. § 404.1545(b).  The claimant has the burden of proving the existence of a disability as defined by the Social Security Act.  *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  If the claimant is unable to establish an impairment that meets the Listings, the claimant must prove an inability to perform the claimant's past relevant work.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).  The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established.  In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA. 20 CFR §§ 404.1560(b), 404.1565, 416.960(b), 416.965.  If the claimant has the RFC to do his past relevant work, the claimant is not disabled.  If the claimant is unable to do any past relevant work, the

analysis proceeds to the fifth and final step.

At the last step of the sequential evaluation process (20 CFR §§ 404.1520(g), 416.920(g)), the ALJ must determine whether the claimant is able to do any other work considering his RFC, age, education and work experience. In determining the physical exertional requirements of work available in the national economy, jobs are classified as sedentary, light, medium, heavy, and very heavy. 20 CFR § 404.1567. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and his impairment meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the RFC, age, education and work experience. 20 CFR §§ 404.1512(g), 404.1560(c), 416.912(g), 416.960(c).

B.      THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

## V.   ANALYSIS

A.   Whether the ALJ and/or the Appeals Council Erred in Considering the Claimant's Medication Side Effects

The Claimant argues that the ALJ and the Appeals Council erred by failing to make specific findings regarding the side effects of the Claimant's medications. Doc. No. 14 at 5.[1] Claimant states that he developed an allergy to each new medication prescribed, such as Tylenol, Darvocet, Penicillin, Motrin, Codeine and Tramadol. *Id.* at 6. Nonetheless, the Claimant maintains that the ALJ did not elicit testimony, consider or make specific findings as to his medication side effects. *Id.* at 7. The Claimant argues that the Appeals Council compounded the problem by failing to consider "new and material" evidence that was submitted, which confirmed the side effects of Claimant's medications. *Id.* at 10-11. Rather, Claimant maintains that the

---

[1] The Court notes that the Claimant directs the Court to portions of his testimony which "indicat[e] [he] experiences side effects", yet the testimony referenced by Claimant is not related to side effects from his medication. Rather, the testimony is in regard to the side effects the Claimant experiences from his condition. For instance, the Claimant testified that he feels sick in the mornings as a result of his HIV, not as a result of his medications. Doc. No. 14 at 5; *See* R. 32.

Appeals Council "used boiler-plate language to imply that it considered all the evidence." *Id.* at 11.

In the Eleventh Circuit, the ALJ has the duty to develop a full and fair record even when the claimant is represented by counsel. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995) (ALJ's duty to develop a full and fair record exists whether or not the applicant is represented). In *Rease v. Barnhart*, 422 F.Supp.2d 1334, 1372 (N.D. Ga. 2006), the court explained the connection between the claimant's burden and the ALJ's duty as follows:

> Although the burden of proof is on the claimant to prove disability, the ALJ is under a duty to conduct a full and fair inquiry into all the matters at issue. *Ford v. Secretary of Health and Human Services*, 659 F.2d 66 (5th Cir.1981). Thus, in general, the claimant has the burden of obtaining his medical records and proving that he is disabled. 20 C.F.R. § 404.1512(a) and (c). On the other hand, the Commissioner (ALJ) has the responsibility to make every reasonable effort to develop the claimant's complete medical history, for at least the twelve months preceding the month in which the claimant filed his application and, if applicable, for the twelve month period prior to the month in which he was last insured. 20 C.F.R. § 404.1512(d).
>
> . . .
>
> When the medical evidence is inadequate for the Commissioner to determine whether the claimant is disabled, the Commissioner has the responsibility to re-contact the claimant's treating physician(s) or other medical source(s) and determine whether the additional information the ALJ needs is available. 20 C.F.R. § 404.1512(e). If the additional needed medical evidence is not readily available, then the ALJ should obtain a consultative examination. 20 C.F.R. §§ 404.1517 and 416.917; *Sellers v. Barnhart*, 246 F.Supp.2d 1201 (M.D.Ala.2002); *Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir.1988); *Caulder v. Bowen*, 791 F.2d 872 (11th Cir.1986); *compare Murray v. Heckler*, 737 F.2d 934 (11th Cir.1984).

*Id.* at 1372. In *Cowart v. Schweiker*, 662 F.2d 731 (11th Cir. 1981), the Eleventh Circuit held that the ALJ failed in his duty to fully develop the record because "he neither elicited testimony

nor made any findings regarding the effect of [claimant]'s prescribed medications upon her ability to work." *Id.* at 737. In *Cowart*, the court noted the claimant's testimony at the administrative hearing that she was "kind of zonked most of the time" as a result of taking her medications. *Id.* Thereafter, the court stated: "It is conceivable that the side effects of medication could render a claimant disabled or at least contribute to a disability." *Id.* The Court quoted *Figueroa v. Secretary of HEW*, 585 F.2d 551 (1st Cir. 1978), which held:

> The present record contains no medical evidence regarding whether the appellant's medication was in "unusually large doses" or whether its side effects might conceivably be disabling. While appellant's claim might be exaggerated, a layman is in no position to make any such determination on this record. It would have been appropriate for the [ALJ] to have sought further medical evidence, or to have made some further inquiry, since appellant raised the question. *See Thompson v. Califano*, 556 F.2d 616, 618 (1st Cir. 1977); *Miranda v. Secretary*, 514 F.2d 996 (1st Cir. 1975). At the very least, the [ALJ] should have made a finding on appellant's claim regarding side effects, making it possible for a reviewing tribunal to know that the claim was not entirely ignored.

*Id.* (quoting *Figueroa*, 585 F.2d at 554).

Although the ALJ has the duty to fully develop the record, the Claimant carries the burden of establishing he is disabled. *Carnes*, 936 F.2d at 1218. In the present case, although the Claimant indicated in his Disability Report that he suffers from appetite loss, nervousness, dizziness and upset stomach (R. 180), the medical records do not reflect any complaints by the Claimant about the side effects of his medication. He did report having allergic reactions to a number of medications, but he was taken off those medications. *See, e.g.,* R. 370. On multiple occasions, the Claimant denied that he had any adverse side effects to his medication and maintained that he could perform his activities of daily living. R. 352-55. In fact, the latest medical record, dated January 7, 2008, reflects that the Claimant denied any side effects from his

medications. R. 352.  Furthermore, the bulk of the medical record, including the records of Dr.

Warner, the Claimant's treating HIV doctor, do not reflect any medication side effect complaints.

*See* R. 229, 235, 244, 270, 273, 276, 279, 283-84, 289, 295, 298, 305, 308, 334, 344, 348, 362-

63, 370-71, 378-79.

When asked by his attorney at the administrative hearing whether he suffered any side

effects from his HIV medications, the Claimant stated:

> No more than like I said, sickness type.  Until I, once I eat something
> then it'll pass over.  But, I only take it like, I take it at 12:00 the morning,
> and I have a real hard time of it, I mean that's when I feel it.

R. 38.  Thus, Claimant testified that the side effects from his medications pass once he eats. As

set forth more fully below, the ALJ found the Claimant's testimony lacked credibility regarding

his symptoms. Based on the medical record and representations the Claimant made to his treating

doctors, there is substantial evidence supporting the ALJ's finding that Claimant did not suffer

any significant side effects from his medication.

In her decision, the ALJ stated the following with respect to the Claimant's medications:

> In August 2007, the [C]laimant sought emergency room treatment again
> for his back pain.  Interestingly, the examining doctor noted that every
> time the [C]laimant came in for treatment of his back pain, he reported
> being allergic to each medication that he had been given at each previous
> visit . . . Two months later, on October 4, 2007, Dr. Olubukunola
> Thomas started the [C]laimant on Lortab for treatment of back and knee
> pain.  At his next visit on October 29, 2007, the [C]laimant reported that
> he was getting good relief with the Lortab.  He even stated that he was
> able to do his activities of daily living.  He denied any side effects from
> the medications, and he stated that he was sleeping well.  In November
> 2007 and January 2008, the [C]laimant again reported that he was getting
> good relief from his Lortab.  The undersigned also notes that despite the
> [C]laimant's alleged back and knee pain, he is able to do a wide range of
> activities.  He spends quite a bit of his day walking around town.  In
> addition, he admitted to Dr. Thomas on several occasions that his pain
> was controlled with medications and he was even able to perform his

-16-

<u>activities of daily living</u>.

R. 15-16 (internal citations omitted) (emphasis added). Thus, the ALJ clearly considered the Claimant's medication side effects and based on the Claimant's own representations, determined that he did not suffer any side effects. Accordingly, it is recommended that the Court find the ALJ did not err by failing to address any side effects Claimant alleged due to medications and that the ALJ made specific findings with respect to that issue that are supported by substantial evidence. *See Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990) (claimant's lack of side effect complaints supported ALJ's determination that the side effects of medication did not present a significant problem).

When a claimant submits additional evidence to the Appeals Council, a reviewing court must consider whether the new evidence renders the denial of benefits erroneous. *Ingram v. Comm'r*, 496 F.3d 1253, 1262, 1266 (11th Cir. 2007). 20 C.F.R. § 404.970(b) states:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge decision. It will again review the case if it finds that the administrative law judge's actions, findings or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970(b). Thus, the Appeals Council must review the entire record in conjunction with the newly submitted evidence and determine if the ALJ's decision is not supported by the weight of the evidence. As set forth above, the Appeals Council noted that it received additional evidence, which it made part of the record, and denied review of the ALJ's decision. R. 1-4. The Appeals Council's decision to deny review is supported by substantial evidence. The Court does not find that the new evidence submitted by the Claimant renders the ALJ's decision to deny

benefits erroneous.  Accordingly, it is recommended that the Court find the ALJ and Appeals Council did not err in considering the Claimant's side effects to his medication.

> B.  Whether the ALJ Erred in Considering the Claimant's Subjective Complaints of Pain

In the Eleventh Circuit, subjective complaints of pain are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms.  By this standard, there must be: (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged symptom arising from the condition or (3) evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)).[2]  "20 C.F.R. § 404.1529 provides that once such an impairment is established, all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." *Foote*, 67 F.3d at 1561; 20 C.F.R. § 404.1529.[3]  Thus once the pain standard is satisfied, the issue becomes one of credibility.

---

[2] "Medical history and objective medical evidence such as evidence of muscle atrophy, reduced joint motion, muscle spasm, sensory and motor disruption, are usually reliable indicators from which to draw reasonable conclusion about the intensity and persistence of pain and the effect such pain may have on the individual's work capacity." Social Security Ruling 88-13.

[3] SSR 96-7p provides: "2. When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects. 3. Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence. 4. In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms,

A claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. *Foote*, 67 F.3d at 1561. "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Id.* at 1561-62. SSR 96-7p states:

> When additional information is needed to assess the credibility of the individual's statements about symptoms and their effects, the adjudicator must make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements. In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:
> 1. The individual's daily activities;
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p. A reviewing court will not disturb a clearly articulated credibility finding <u>with substantial supporting evidence in the record</u>. *Foote*, 67 F.3d at 1562 (emphasis added). The failure of the ALJ to articulate the reasons for discrediting subjective testimony requires, as a

---

statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." SSR 96-7p (emphasis added).

matter of law, that the testimony be accepted as true. *Id.* The lack of a sufficiently explicit credibility finding may give grounds for a remand if the credibility is critical to the outcome of the case. *Id.* If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote*, 67 F.3d at 1562 (*quoting Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court)). Thus, where credibility is a determinative factor, the ALJ must explicitly discredit the testimony or the implication must be so clear as to amount to a specific credibility finding. *Foote*, 67 F.3d at 1561; 20 C.F.R. § 404.1529.

As set forth above, the ALJ found that the Claimant's condition could reasonably be expected to produce the symptoms alleged by Claimant, but he lacked credibility. R. 15. The ALJ stated:

> The medical evidence confirms that the [C]laimant has been diagnosed as HIV+. However, the medical evidence shows that he has had no significant problems as a result of his HIV other than some occasional rashes. In February 2006, the [C]laimant denied having any shortness of breath or fatigue. In March 2006, Dr. Daniel Warner, the [C]laimant's HIV doctor, noted that the [C]laimant was stable on his medications. In July 2006[,] the [C]laimant had a rash on his face but he was "otherwise clinically asymptomatic". By November 2006, the [C]laimant's facial rash had resolved and he denied having any new constitutional symptoms. In March 2007, the [C]laimant had a recurrence of his rash and Dr. Warner encouraged him to be compliant with his HIV medications. In August 2007, the [C]laimant reported that he had been off his medications while in jail and he had developed some skin ulcerations. Dr. Warner restarted the [C]laimant on his medications and by September 2007, the [C]laimant's rash had resolved.
>
> . . .

In terms of the [C]laimant's alleged back pain, the evidence shoes that [he] does, in fact, have some disc bulges at the L4-5 and L5-S1 levels with evidence of degenerative disc disease, all of which is confirmed by MRI testing performed in July 2007. <u>The undersigned notes, however, that the [C]laimant has no significant neurological deficits, and he has also had a positive response to treatment and medications. Specifically, the evidence shows that the [C]laimant was treated at the emergency room at Halifax Medical Center in March 2007 for complaints of chronic back pain, but on examination he was able to move about without any evidence of limitation or any significant signs of discomfort</u> . . . In August 2007, the [C]laimant sought emergency room treatment again for his back pain. Interestingly, the examining doctor noted that every time the [C]laimant came in for treatment of his back pain, he reported being allergic to each medication that he had been given at each previous visit. <u>On examination, the doctor noted that the [C]laimant was able to move his legs well. He moved from sitting to standing without difficulty. He did have some spasms, but it was only "mild" and "minimal" and there was no pain to palpation of the lumbar spine</u> . . . Two months later, on October 4, 2007, Dr. Olubukunola Thomas started the [C]laimant on Lortab for treatment of back and knee pain. At his next visit on October 29, 2007, <u>the [C]laimant reported that he was getting good relief with the Lortab. He even stated that he was able to do his activities of daily living. He denied any side effects from the medications, and he stated that he was sleeping well</u>. In November 2007 and January 2008, the [C]laimant again reported that <u>he was getting good relief from his Lortab. The undersigned also notes that despite the [C]laimant's alleged back and knee pain, he is able to do a wide range of activities. He spends quite a bit of his day walking around town. In addition, he admitted to Dr. Thomas on several occasions that his pain was controlled with medications and he was even able to perform his activities of daily living</u>.

R. 15-16 (internal citations omitted) (emphasis added). The ALJ articulated a specific basis for discrediting the Claimant's credibility, which is supported by substantial evidence. *See* R. 334, 352-55, 371. The ALJ stated that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence base on the requirements of . . . [social security regulation ("SSR")] 96-7p" in determining the Claimant's RFC. R. 14. She complied with the requirements set forth in SSR

96-7p. The Claimant represented to Dr. Thomas that he can perform his activities of daily living. R. 352-55. The record does not contain any medical opinion stating Claimant is disabled and the medical records do not demonstrate Claimant is restricted in performing basic work activities to a greater degree than the ALJ found him to be. Substantial evidence supports the ALJ's credibility determination. Therefore, it is recommended that this Court not disturb the ALJ's credibility finding. *Foote*, 67 F.3d at 1561.

## VI. <u>CONCLUSION</u>

For the reasons stated above, it is **RECOMMENDED** that the Commissioner's decision be **AFFIRMED**. The Clerk should be directed to enter Judgment in favor of the Commissioner and close the case.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on May 24, 2010.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to:

Presiding District Court Judge

Richard A. Culbertson
Richard A. Culbertson, P.A.
Suite E
3222 Corrine Dr.
Orlando, Florida      32803

Susan R. Waldron
U.S. Attorney's Office
Suite 3200
400 N. Tampa St.
Tampa, Florida        33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Nadine DeLuca Elder, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia        30303-8920

The Honorable JoAnn L. Anderson
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Desoto Building, #400
8880 Freedom Crossing
Jacksonville, Florida   32256-1224